IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE ACOSTA, Jr.,

      Plaintiff,

v.                                                      No. 15-cv-0530 SMV/KRS

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Alter or Amend Judgment [Doc. 83], filed on July 17, 2017. Plaintiff responded on July 25, 2017. [Doc. 85]. Defendant replied on August 8, 2017. [Doc. 87]. Additionally before the Court is Plaintiff's Motion for Leave to File Surreply [Docs. 89, 89-1], filed August 10, 2017. Defendant responded on August 24, 2017. [Doc. 91]. Having considered the briefing, record, and relevant law, and being otherwise fully advised in the premises, the Court will GRANT Plaintiff's Motion for Leave to File Surreply and GRANT IN PART and DENY IN PART Defendant's Motion to Alter or Amend Judgment.

## Background

Following a three-day bench trial, the Court entered detailed Findings of Fact and Conclusions of Law in this case. [Doc. 80]. The Court found that the collision at issue was caused solely by Defendant's negligence and that there was no comparative negligence on the part of any other person or entity. *Id.* at 26–28. The Court then found that some, but not all, of

Plaintiff's injuries were attributable to the accident. *Id.* at 28–33. Considering all the evidence, the Court was "not convinced the accident happened the way Plaintiff remembers it"—i.e., that the collision caused the train to decelerate suddenly and to such a degree that Plaintiff was thrown about the cabin. *Id.* at 28–29. Instead, the Court was convinced by a preponderance of the evidence that, after moving from his seat and bracing for impact, Plaintiff reacted to the impending collision. *Id.* at 29. It was this reaction that "caus[ed] his body to strike the interior of the cabin." *Id.* The Court found that Plaintiff struck the cabin with sufficient force to cause his lower back injuries (or, more specifically, to aggravate a pre-existing disc herniation) and to cause a cervical strain. *Id.* at 29–31. The Court was not convinced by a preponderance of the evidence that the accident caused the balance of his alleged neck injuries or the claimed injuries to his shoulders and knees. *Id.* at 31–33. The Court therefore awarded a portion of Plaintiff's requested past and future medical expenses. *Id.* at 34–36. It also awarded damages for past wage loss, loss of future earning capacity, and pain and suffering. *Id.* at 36. Finally, the Court awarded costs pursuant to Fed. R. Civ. P. 54 and post-judgment interest pursuant to 28 U.S.C. § 1961. *Id.* The Court entered a Final Judgment concurrently with its Findings of Fact and Conclusions of Law. [Doc. 81]. It entered an Amended Final Judgment on June 22, 2017.[1] [Doc. 82].

Defendant filed the instant motion to alter or amend the final judgment pursuant to Fed. R. Civ. P. 59(e). Defendant contends judgment should be amended in its favor on two grounds. First, it argues that the record contained no evidence on which the Court could base its finding that Plaintiff's own reaction to the collision caused his injuries. Defendant contends that,

---

[1] The amended judgment did not alter the substance of the original judgment.

2

while Dr. Freeman testified that Plaintiff *could* have sustained his injuries through his own volitional movement during the accident, he was offering a hypothetical for which there was no factual basis. [Doc. 83] at 6–8. Defendant argues that there are no underlying facts in the record to support this alternative factual scenario and that, in fact, Plaintiff's own testimony (that he was thrown about the cabin as a result of the collision) directly contravened it. Therefore, Defendant concludes, Dr. Freeman's testimony on this matter constitutes unsupported speculation not founded on sufficient facts, out of line with the dictates of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendant also argues that Dr. Wellborn's concession that Plaintiff suffered "at most" a neck and back strain as a result of the accident did not provide any basis for the Court to make its finding. [Doc. 83] at 5–6.

Second, Defendant argues that the factual scenario the Court ultimately adopted was a new theory of recovery never before raised by Plaintiff. Defendant contends the theory was not tried by consent in accordance with Fed. R. Civ. P. 15(b) and that it was "deprived . . . of a fair opportunity to defend" against the theory. *Id.* at 13 (internal quotation marks omitted). Namely, Defendant contends it was deprived of the opportunity to put forth a defense that Plaintiff's reaction constituted an "independent intervening cause" that disrupted the chain of causation. *Id.* at 12–13; [Doc. 87] at 7–9. Defendant argues it is entitled to judgment in its favor because the Court "rejected Plaintiff's only claim of injury." *Id.* In the alternative, Defendant requests that the Court amend its award of post-judgment interest in accordance with 31 U.S.C. § 1304. *Id.* at 13–14.

In response, Plaintiff contends that the record contained sufficient evidence on which the Court could find that Plaintiff's injuries were caused by his reaction to the collision. He argues

that the Court could—and did—accept certain portions of Plaintiff's testimony and reject other portions, as was its prerogative as the trier of fact. [Doc. 85] at 2–3. That testimony, together with the testimony of Fermin Acosta and the reasonable inferences drawn from the parties' experts, as well as the exhibits introduced at trial, provided sufficient factual grounds on which the Court could make its findings.

As to Defendant's second argument, Plaintiff points to the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2) and contends that the theory of events on which the Court relied fell within the scope of the existing pleading, such that the Court need not consider whether there was "trial [of the new issue] by consent." *Id.* at 4–5. Further, even if Rule 15(b) does apply, Plaintiff argues, the Court did not abuse its discretion in determining that the alternative theory of recovery was tried by consent. *Id.* at 5–8. Plaintiff argues that he brought out evidence of the theory at trial through the testimony of Dr. Freeman. And, when Dr. Freeman testified, Defendant did not object or claim surprise. Instead, it cross-examined him on the issue and later cross-examined Plaintiff himself regarding his reaction to the collision. *Id.* at 6–7. Plaintiff also argues, in his surreply, that Defendant had notice of the "reaction" theory before trial. [Doc. 89-1]. Defendant had access to Fermin Acosta's post-accident interview, during which he stated that Plaintiff had "jumped" at the time of the collision. In addition, in his affidavit in support of Plaintiff's motion to exclude the testimony of Dr. Wiechel, Defendant's expert, Dr. Freeman stated that Dr. Wiechel "guessed" about, among other things, "Mr. Acosta's muscular preparation and the manner in which he braced himself, his balance, and *his reaction* to the first and potentially second collision force." [Doc. 89-1] at 4. Plaintiff contends that Defendant has no colorable argument that Plaintiff's reaction constituted an "independent

intervening cause." [Doc. 85] at 8–9. It does not matter, Plaintiff concludes, whether he was thrown by the forces of the collision or whether he reacted to the collision itself. *Id.*; [Doc. 89-1] at 1–3.

Plaintiff does not contest Defendant's alternative request that the final judgment be amended with respect to the award of post-judgment interest. [Doc. 85] at 9.

## Legal Standard

A district court may alter or amend a judgment on a motion filed no later than 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). The court may reconsider a final decision if the moving party shows "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The court "is vested with considerable discretion" in determining whether to grant or deny such a motion. *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996). A Rule 59(e) motion is not intended to "allow a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier." *ACE USA v. Union Pac. R.R. Co.*, 2011 WL 6097138, at *1 (D. Kan. Dec. 7, 2011) (unpublished). "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Id.*

Granting a motion to alter or amend is an "extraordinary remedy" to be used "sparingly," in recognition of the interests in finality and the conservation of judicial resources. *Torre v. Federated Mut. Ins. Co.*, 906 F. Supp. 616, 619 (D. Colo. 1995); *cf. Allender v. Raytheon*

*Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006) (discussing related standard under Rule 60(b)).

<u>Analysis</u>

<u>Plaintiff may file a surreply.</u>

Pursuant to D.N.M.LR-Civ. 7.4(b), the filing of a surreply requires leave of the Court. Surreplies are often granted "when a party raises a new argument or new evidence in a reply brief." *Navajo Health Found.-Sage Mem. Hosp., Inc. v. Burwell*, 110 F. Supp. 3d 1140, 1183 (D.N.M. 2015). A surreply "gives the nonmovant a chance to respond to the new information." *Id.* Defendant's brief in chief raised two arguments: first, that the Court's findings were not supported by sufficient evidence, and second, that Defendant was entitled to judgment in its favor because the Court rejected (what Defendant characterized as) Plaintiff's only theory of recovery. *See* [Doc. 83]. Plaintiff responded to the first argument by suggesting, *inter alia*, that it was an untimely *Daubert* argument that should have been raised before trial. *See* [Doc. 85] at 3 n.2. In its reply, Defendant countered this argument by contending that "trial was the first time any party raised the possibility of Plaintiff's reaction to the collision, rather than the collision itself, as the mechanism of injury. Dr. Freeman's expert report, disclosed during discovery, contained no such theory." [Doc. 87] at 2. Defendant attached Dr. Freeman's report as an exhibit to the reply. [Doc. 87-1]. The point of attaching the report as an exhibit was to show that it did not place Defendant on notice of an alternative theory of causation, i.e., that Plaintiff's reaction to the collision caused his body to strike the interior of the cabin. Dr. Freeman's report was not introduced at trial, nor was it made part of the record in connection with any pretrial motion. Thus, in that sense, it was "new" evidence, although, obviously, the

existence of the report came as no surprise to Plaintiff. Plaintiff seeks leave to file a surreply in order to add context to the report, that is, to point out that Defendant was aware (or should have been aware) of this alternative theory of causation before trial. The Court finds that the motion is well-taken and should be granted. The Court will grant Plaintiff's Motion for Leave to File Surreply to allow Plaintiff to address the arguments and evidence in Defendant's reply pertaining to the expert report of Dr. Freeman. The Court notes, however, that it would reach the same result on Defendant's Motion to Alter or Amend Judgment regardless of its consideration of the arguments in Plaintiff's surreply.

The Court's findings on causation were
supported by the record evidence.

After considering all the evidence presented over the course of the three-day trial, the Court made findings on causation. The Court found it more likely than not that Plaintiff was not jolted or thrown by the forces of the collision, but rather that he reacted to the collision. [Doc. 80] at 28–31. This reaction caused him to strike the interior of the cabin with enough force to cause lower back and neck injuries. *Id.* Defendant now contends that these findings were not supported by sufficient evidence. Defendant contends the Court based its findings on two evidentiary sources—the expert testimony of Dr. Freeman and that of Dr. Wellborn—neither of which provided sufficient grounds to support those findings. *See* [Doc. 83] at 4–8. In short, Defendant argues that Dr. Wellborn did not testify to causation at all and that Dr. Freeman's alternative causation testimony amounted to unsupported speculation because the hypothetical he proposed ran contrary to Plaintiff's own, uncontroverted testimony. *Id.* Defendant does not allege new evidence or a change in the controlling law; therefore, it is appropriate to reconsider amending the final judgment on this ground only if the Court's causation findings constituted

"clear error" or failure to amend would result in "manifest injustice." *See Servants of the Paraclete*, 204 F.3d at 1012.

Dr. Freeman testified that it was not possible to reconstruct the accident to determine whether the collision caused the train to decelerate enough to throw Plaintiff about the cabin. *See* [Doc. 80] at 5–7.  He focused instead on Plaintiff's injuries.  *See* Trial Tr. Apr. 18, 2017, 80:7–15.  He noted that bruises on Plaintiff following the collision provided "some evidence of acute blunt trauma," suggesting some impact inside the train.  *Id.* at 80:21–24.  He considered Plaintiff's own recollection of events.  Dr. Freeman believed it was plausible that a sudden, brief deceleration caused Plaintiff to be thrown about the cabin.  [Doc. 80] at 7.  But he also testified it was plausible that Plaintiff reacted to the collision.  *Id.*  Employing his differential diagnosis methodology, he testified that it did not matter which explanation of Plaintiff's movement was true because Plaintiff's movement, whatever its exact catalyst, "could have caused his body to strike the interior of the cab with sufficient force to cause all of his injuries."  *Id.*  He went on to testify that there was a temporal relationship between the event and the injury, and no other explanation was more probable.  *Id.* at 7–8.

As Defendant points out, Dr. Freeman did not testify which hypothetical was more likely, only that either could plausibly have caused the injuries Plaintiff claimed.  Defendant argues that Dr. Freeman's alternative hypothetical (that Plaintiff moved in reaction to the collision) amounts to impermissible speculation because Plaintiff himself testified that he did not move in reaction, but in fact was thrown as a result of the collision.  Defendant contends that no record evidence supports the alternative hypothetical on which the Court relied.  Defendant, however, overlooks

the testimony of Fermin Acosta, overstates the controlling value of Plaintiff's testimony, and therefore is without grounds for challenging Dr. Freeman's testimony as mere speculation.

First, the Court considered the testimony of Fermin Acosta. As the Court noted, Fermin Acosta testified that he saw Plaintiff moving just before the accident. [Doc. 80] at 29. Moreover, his testimony suggested that he thought Plaintiff had reacted to the coming collision by moving away from the window: "I saw [Plaintiff] jump—jump or shoved or whatever it was." Trial Tr. Apr. 18, 2017, 38:7–8.

The Court also considered the testimony of Plaintiff. It is true that, as the Court acknowledged in its findings, Plaintiff himself testified that he felt he was thrown by the force of the collision. *See* [Doc. 80] at 29. But the Court also recognized a number of other factors potentially bearing on Plaintiff's recollection of the precise mechanism by which he struck the cabin—namely, that "it all happened within seconds" and that Plaintiff recalled being "terrified" that if something came through the window on his side of the cabin, he "could possible die" or sustain "severe injuries." Trial Tr. Apr. 19, 2017, 145:16–146:11. By all accounts, the collision was very loud. *See id.* at 148:1–2 (Plaintiff describing the sound as "very, very loud"); Trial Tr. Apr. 18, 2017, 36:23–37:7 (Fermin Acosta comparing the sound of the collision to that of an improvised explosive device and noting that the sound scared him). In other words, the Court accepted Plaintiff's testimony as to *what* happened (his body struck the interior of the cabin in the collision), but did not accept Plaintiff's testimony as to precisely *how* it happened. The Court was free to make such factual determinations. Indeed, they are the unique province of the court as factfinder in a non-jury trial. *See, e.g.*, *Holt v. Deere & Co.*, 24 F.3d 1289, 1295 (10th Cir. 1994) (noting that factfinders are "entitled to accept or reject the testimony of any witness in

whole or in part"); *United States v. Thompson*, 591 F. App'x 652, 655 (10th Cir. 2014) (finding no clear error in the district court crediting the balance of a witness's testimony after rejecting the part of it that was "illogical").

The Court found by a preponderance of the evidence that Plaintiff was not thrown by the forces of the collision, but rather reacted to the collision. Accepting Dr. Freeman's testimony that Plaintiff's reaction could have caused his injuries, the Court found that Plaintiff's lower back and neck injuries (to an extent) were caused by Defendant's negligence. It was not clear error for the Court to find that Plaintiff reacted to the collision.

Nor was it clear error to accept Dr. Freeman's alternative hypothesis. It is true, as Defendant points out, that an expert's opinion must be supported by sufficient fact and may not be based on mere speculation. *See* [Doc. 83] at 7–8 (citing Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589–90). But, for the reasons described above, Dr. Freeman's testimony was not based on mere speculation. The case law Defendant cites in support of its position is therefore distinguishable. Dr. Freeman did not testify in the face of contrary "indisputable record facts," *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). This was not a case where "[t]he record evidence on this topic support[ed] but one conclusion," *Pioneer Centres Holding Co. Employee Stock Ownership Plan & Trust v. Alerus Financial, N.A.*, 858 F.3d 1324, 1340–41 (10th Cir. 2017). Defendant suggests that Plaintiff's testimony bound Dr. Freeman to a single hypothesis of events (a hypothesis the Court rejected in its findings). But the record evidence was not indisputable. As described above, the evidence "provided a factual basis" for Dr. Freeman's hypotheticals. *See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499–1500 (10th Cir. 1996). The Court, as factfinder, "was free to accept or reject the expert's

opinion in deciding, based on the proof provided," the mechanism of Plaintiff's injury. *Id*. There was no clear error in the Court's finding that Plaintiff's reaction to the collision caused his injuries.

Defendant also argues that the Court erroneously relied on Dr. Wellborn's testimony. In its findings, the Court stated "even Dr. Wellborn agreed that . . . *something* happened to cause injuries to [Plaintiff's] neck and lower back. [Doc. 80] at 29. Defendant argues that Dr. Wellborn "was testifying that, if Plaintiff's testimony were to be credited, he sustained 'at most' a neck and back strain."[2] [Doc. 83] at 5. The Court need not consider this additional

---

[2] Defendant's characterization of Dr. Wellborn's testimony is strained, at best. Defendant's counsel began his direct examination of Dr. Wellborn by taking him through a lengthy, detailed summary of Plaintiff's medical treatment following the accident. *See* Trial Tr. Apr. 20, 2017, 70–86. At the end of that discussion, still on direct examination, Dr. Wellborn was asked the following questions and gave the following answers:

> Q. (BY MR. LUCERO) Dr. Wellborn . . . . can you . . . with any reasonable degree of medical certainty, provide me with an opinion as to your conclusions with respect to all of the medical records that you reviewed concerning Mr. Acosta?
>
> A. Well, I think the bottom line [question] is *what injuries did he sustain. And he sustained a lumbar contusion and a contusion to his leg. I felt that he probably also had cervical and lumbar strain/contusions.* And that was the extent of the injuries *he sustained*.
>
> Q. And in your expert opinion . . . was this course of treatment that he went through for almost two years from the date of the accident, was it necessary, medically necessary?
>
> A. Well, the treatment that was necessary was—I had no issue with Gerald Champion emergency room. That seemed to be an appropriate thing to do. And up to six chiropractic visits with Dr. Untersee. His records do not reflect a need for treatment beyond that . . . .

*Id.* at 91:16–92:8 (emphasis added); *see also* [Doc. 75] at 4 (Defendant's Trial Brief summarizing Dr. Wellborn's anticipated testimony). This testimony seemed clear to the Court at trial and even clearer after reviewing the transcript, i.e., that Plaintiff sustained cervical and lumbar strain/contusions as a result of the accident, and that the medical care necessary to treat those injuries was limited to the one emergency room visit and six chiropractic visits. Dr. Wellborn confirmed these opinions on cross-examination. Trial Tr. Apr. 20, 2017, 93. At no time did he qualify his testimony with, ". . . assuming you believe the accident happened exactly the way Plaintiff said it happened," as Defendant appears to argue. Dr. Wellborn is a highly qualified and experienced expert witness. *See id.* at 68 (testifying that he has been providing expert testimony since the 1980s and has been deposed 700–800 times). He was aware, of course, that "this case involves a truck/train accident." *Id.* at 70:9–11. When he testified that Plaintiff "sustained" certain injuries, what else could he have meant but, "sustained as a result of the accident"? And when he testified that certain treatment was "medically necessary," what else could he have meant but, "medically necessary as a result of the accident"? The Court concluded that Dr. Wellborn had "conceded that Plaintiff was, in

11

argument because the Court expressly based its causation findings on "the testimony of Dr. Freeman, Plaintiff, and Fermin Acosta." [Doc. 80] at 29. The testimony of those witnesses, together with the exhibits introduced at trial, provide more than sufficient evidence to support the Court's findings.

Defendant was not deprived notice
of Plaintiff's alternative theory of recovery.

Pursuant to Rule 15(b), a party may amend its pleading during or after trial under certain circumstances. "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). Although a party "may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue," formal amendment is not necessary. *Id.* "[F]ailure to amend does not affect the result of the trial of that issue." *Id.* "A district court may amend the pleadings merely by entering findings on the unpleaded issues." *Trip Mate, Inc. v. Stonebridge Cas. Ins. Co.*, 768 F.3d 779, 784 (8th Cir. 2014).

Implied consent exists "where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 457 (10th Cir. 1982). A party impliedly consents to the trial of an unpleaded issue "either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence." *Green Country Food Mkt. v. Bottling*

---

fact, injured in the accident." [Doc. 80] at 10. Admittedly, he was never asked directly, "Dr. Wellborn, do you concede that Plaintiff was injured in the accident." But that is what the Court understood him to be saying, and that remains the Court's understanding after reading the transcript of his testimony. In any event, the Court's reference to his testimony was more for emphasis than foundation. The Court's findings regarding causation were based on the testimony of Dr. Freeman, Fermin Acosta, and Plaintiff, as well as the exhibits introduced at trial. Dr. Wellborn's "concession" vel non was not critical to those findings, though the Court maintains his testimony supports them.

*Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004) (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1217 (10th Cir. 2000)). Implied consent cannot be based on the introduction of evidence "that is relevant to an issue already in the case when there is no indication that the party presenting the evidence intended to raise a new issue." *Id.* (citing *Moncrief v. Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150, 1162 (10th Cir. 1999)).

Defendant contends that the alternative mechanism of injury on which the Court rested its causation findings was an unpleaded issue for purposes of Rule 15(b) and that it did not consent to the trial of such issue. As an initial matter, it is not clear to the Court that this alternative factual scenario constitutes an unpleaded issue that triggers a Rule 15(b) analysis. In his complaint, Plaintiff stated the following about the accident and causation: "Plaintiff attempted to stop the train, but the train ultimately crashed into the military truck. As a result, Plaintiff sustained serious injuries to his body." [Doc. 1] at 2. The "unpleaded issue" is a factual dispute pertaining to a single element of Plaintiff's negligence claim. And, as Plaintiff notes in his surreply, the possibility that Plaintiff reacted to the collision was made known from the outset of the case. *See* [Doc. 89-1] at 3 (identifying recorded statement of Fermin Acosta, taken the day of the accident, describing Plaintiff as having "jumped" in reaction to the collision). However, as Defendant points out, Plaintiff failed to mention this factual scenario in his pretrial submissions (Plaintiff's Proposed Findings of Fact and Conclusions of Law [Doc. 62] and Trial Brief [Doc. 76]). Nor did Dr. Freeman explicitly consider it in his expert report. *See* [Doc. 87] at 1–2; [Doc. 87-1]. There was no motion by Plaintiff during or after trial to amend his pleading. And Defendant did not provide explicit consent that the factual theory could be tried. Therefore, the Court will consider—to the extent Plaintiff's "alternative theory of causation" constitutes a new

issue not raised in the pleadings—whether the issue was tried by the parties' implied consent. The Court concludes that it was.

In his case in chief, Plaintiff introduced evidence of the alternative mechanism of injury. As the Court noted in its findings, and as discussed *supra*, Dr. Freeman testified that either of two plausible mechanisms of Plaintiff's movement could have caused his injuries. [Doc. 80] at 7. Dr. Freeman's testimony was clear. Defendant did not object to the introduction of this testimony. Moreover, Defendant cross-examined Dr. Freeman at length on this specific point. On cross-examination, Dr. Freeman reiterated: "[O]ne of the [plausible] causes was certainly that there was an impact and a sudden slowing and then a re-acceleration up to speed, but the other explanation was that some of it was reactive on Mr. Acosta's part." Trial Tr. Apr. 18, 2017, 116:13–17. Counsel for Defendant questioned Dr. Freeman about the plausibility of yet a third mechanism by which Plaintiff might have sustained his injuries—hitting the console and twisting while getting up from his seat after he engaged the brake. *See id.* at 122:12–124:20. Dr. Freeman rejected this hypothetical. Later in the cross-examination, defense counsel asked Dr. Freeman directly whether his three-step differential diagnosis methodology would still apply assuming the collision did not result in a transfer of forces felt inside the cab of the train. *Id.* at 130:19–131:18. Dr. Freeman again testified that it would, because Plaintiff's reaction could have triggered the impact between his body and the cabin of the train. *Id.* at 132:1–19. He testified that this alternative was "[w]ithout a doubt" a plausible mechanism of injury. *Id.* at 132:18–19. Defense counsel subsequently questioned Dr. Freeman further about "reactive force." *Id.* at 133–37, 139–41. Defense counsel also cross-examined Plaintiff on this point, noting that "Dr. Freeman testif[ied] before about two possibilities: One was the impact throwing

you back and forth; and the other possibility was that you somehow got scared and jumped."
Trial Tr. Apr. 19, 2017, 188:10–15.

Plaintiff also sought to elicit testimony from Defendant's accident reconstructionist,
Dr. Wiechel, about other plausible explanations for Plaintiff's movement within the cabin.
Defendant objected to this line of questioning as calling for speculation. Trial Tr. Apr. 20, 2017,
35:23–36:3. Defendant contended that if Plaintiff's "counsel has a separate theory, they should
have presented that in their case in chief, and they didn't." *Id.* at 36:1–3. The Court overruled
the objection, responding that Plaintiff *had* raised this alternative theory in their case in chief. *Id.*
at 36:4–5. The Court later summed up the competing testimony on injury causation as follows:
"[Dr. Wiechel] has testified that there's no physical explanation for the forces that Mr. Acosta
claims that he experienced. Mr. Acosta and [Dr. Freeman have] testified that there could be
other things . . . that caused it." *Id.* at 60:13–18.

When evidence of the alternative mechanism of injury was offered at trial, Defendant did
not object on the ground that Plaintiff had raised an unpleaded issue. *See Green Country Food
Mkt.*, 371 F.3d at 1280. Defendant argues that it was not obligated to object to Dr. Freeman's
testimony because the testimony was relevant to a pleaded issue (i.e., to the primary mechanism
of injury argued by Plaintiff). *See Moncrief*, 174 F.3d at 1162 ("Implied consent cannot be based
upon the introduction of evidence that is relevant to an issue already in the case when there is no
indication that the party presenting the evidence intended to raise a new issue."). While it is true
that Dr. Freeman's testimony was relevant to Plaintiff's overall theory of causation, discrete
portions of that testimony were devoted exclusively to the "reactive forces" theory. *See Wallin
v. Fuller*, 476 F.2d 1204, 1210 (5th Cir. 1973) (finding that, while certain portions of witness's

testimony went to pleaded issue, other parts were "much more strongly relevant" to the unpleaded theories, and thus could be used to support the theory of implied consent). This evidence did not slip by defense counsel unnoticed; on the contrary, counsel for Defendant pressed Dr. Freeman on this issue in an effort to impeach his credibility. Trial Tr. Apr. 18, 2017, 122–25, 130–34, 136–42. Defense counsel referred back to the theory during his cross-examination of Plaintiff. Trial Tr. Apr. 19, 2017, 188.

Defendant cites two cases in support of its argument, but neither is persuasive. In *Moncrief*, the Tenth Circuit found that the trial court had abused its discretion by finding the parties had impliedly consented to trial of one clause in the contract, when the pleadings had contemplated a separate issue. 174 F.3d at 1161. That the opposing party referred to the unpleaded clause several times at trial did not mean that it had been introduced and tried. *Id.* However, in that case, the party asserting the claim had *explicitly disclaimed* that it was raising an issue as to the unpleaded clause. Moreover, the trial court in that case had found that the implied consent necessitated reopening the case for additional discovery and the presentation of new evidence at a subsequent trial. "[S]ua sponte reopening the case for a further trial to breathe life into a failed issue is not the purpose of or sanctioned by Fed. R. Civ. P. 15," the Tenth Circuit concluded. *Id.* at 1163. The circumstances of *Moncrief* are a far cry from the present case.

The second case Defendant relies on, *Trip Mate*, is equally distinguishable. In that case Trip Mate and Stonebridge had entered into a contract called a Managing General Agent Agreement ("MGAA"). 768 F.3d at 781. A dispute arose over profit sharing under the MGAA and Trip Mate sued Stonebridge. Both parties filed numerous pleadings that asserted various

legal theories for why the other was liable for the profit sharing. *Id.* at 782. Significantly, neither party argued that course of dealing had modified the terms of the MGAA; both sides argued simply that they were entitled to judgment under the MGAA's terms.

The district court conducted a two-day trial. Trip Mate presented its case on the first day, and all of its evidence was directed to the issues contained in the pleadings. *Id.* at 782. At the end of the first day, the district court made the following statement to the parties:

> Obviously, one of the issues here is, irrespective of what the [MGAA] says, was there a course of dealing which effectively modified the terms of the [MGAA]. I don't know whether you want to deal with that in your presentations tomorrow or whether you want to deal with it post[-]trial by way of additional briefing, but I'll tell you that that is an issue that I see, and I would like some help in trying to make my way through it. Okay. And then the follow[-]up to that seems to me is that if the [MGAA] was modified through a course of conduct, then what effect does the termination agreement have? Does it terminate the agreement as modified, does it terminate the original agreement? Those are legal issues that I think need to be addressed at some stage.

*Id.* at 782–83. Stonebridge presented its case on the second day. Neither it nor Trip Mate introduced any evidence on the issue raised by the district court on the "course of dealings" amendment theory. *Id.* at 783. Likewise, the parties' post-trial briefing focused exclusively on claims, counterclaims, and defenses presented in the pleadings; neither party addressed whether the course of dealings had modified the MGAA. *Id.* The district court ultimately found in favor of Trip Mate based on a theory the parties had neither pled nor argued—that their course of dealings had amended the MGAA. *Id.* At oral argument before the Eighth Circuit, both conceded that the district court's holding "was a 'curveball' which took them by surprise." *Id.* at 785.

On appeal, the Eighth Circuit reversed, finding that there had been no implied consent to try the unpleaded issue, i.e., whether the MGAA's terms had been modified by the parties' course of dealings. *Id.* Where "neither party provided any witness testimony or submitted any exhibits directly related to" the claim, and where both parties' post-trial briefing suggested that any relevant evidence "was in support of their respective interpretation" of the pleaded claims, there was no implied consent. *Id.* The Eighth Circuit noted that lead trial counsel for both parties were "experienced, well-respected members of their state's bar." *Id.* The Court expressed skepticism that they would have "blatantly ignored the [unpleaded] issue" if they had had actual notice that it was part of the case. *Id.*

This simply was not a case in which an unpleaded issue was allowed to creep into trial in the shadow a pleaded issue. To the extent Defendant previously was unaware of Plaintiff's alternative theory of the mechanism of injury, Defendant was made aware during the direct examination of Dr. Freeman. Counsel for Defendant challenged this theory at trial during his cross-examination of Dr. Freeman and Plaintiff. Defendant was on notice at trial and therefore had the chance to remedy any perceived surprise. But Defendant did not object to the introduction of such testimony as unfair surprise or beyond the scope of Dr. Freeman's report. Defendant did not ask the Court for permission to call any rebuttal witnesses, nor did it request a continuance in order to introduce rebuttal evidence. To the extent consent to try the alternative theory was required, it was implied. The issue was tried. The Court will not now grant the extraordinary remedy of a post-judgment amendment. *See Am. Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 349 (8th Cir. 2013) ("[Plaintiff] knew of [defendant's] intent to litigate the unpleaded . . . claim and had the opportunity at trial to cure any surprise by objecting to

evidence relevant to the claim . . . . It did not. Having failed to object, [plaintiff] impliedly consented to trying the unpleaded . . . claim and is in no position now to contest the amendment.").

Finally, Defendant suggests that Plaintiff's reaction to the collision constituted an "independent intervening cause" that interrupted the chain of causation. [Doc. 87] at 7–9. It argues that, had it been aware of this alternative theory, it would have "introduced railroad safety policies, expert opinion analysis, and statistical data as to the effects of minor train/truck collisions with respect to persons seated in the train and the likelihood of injury to such persons." *Id.* at 8. However, Defendant did know that Plaintiff claimed to be standing at the time of the collision and had braced himself against the console. Defendant even questioned Plaintiff at trial about his safety training and whether he had been instructed to move away from the window in the event of impending collision. *See* Trial Tr. Apr. 19, 2017, 187–88. And Defendant knew that Fermin Acosta had described Plaintiff as reacting to the collision by jumping away from the window. *See* [Doc. 89-1] at 3.

Moreover, Defendant does not show that it suffered any prejudice by not putting on such evidence. The New Mexico Supreme Court "has virtually eliminated the defense of independent intervening cause." *Silva v. Lovelace Health Sys., Inc.*, 2014-NMCA-086, ¶ 2, 331 P.3d 958. Defendant points out that an independent intervening cause "can include intentional tortious or criminal conduct or extraordinary negligence on the part of the plaintiff." [Doc. 87] at 8 (internal quotation marks omitted). Defendant summarily concludes that Plaintiff's reaction to the collision "sound[s] very much like intentional (or at least reckless) conduct." *Id.* But it points to no authority suggesting that reacting to an accident constitutes the type of independent,

unforeseeable conduct that would give rise to such a defense.  Defendant does not show that it

was prejudiced by not putting on evidence in support of an independent intervening cause theory.

Defendant has failed to show that amendment is necessary to "correct clear error" or "prevent

manifest injustice." *See Servants of the Paraclete*, 204 F.3d at 1012.

Post-judgment interest will be awarded
in accordance with 31 U.S.C. § 1304.

Defendant requests that, if the Court otherwise declines to alter or amend the judgment in

its favor, it should amend the judgment with respect to the award of post-judgment interest.  The

Court awarded post-judgment interest from the "date of judgment until paid," pursuant to

28 U.S.C. § 1961.  As Defendant points out, 31 U.S.C. § 1304 governs the award of interest in

actions against the government.  *See Hull by Hull v. United States*, 971 F.2d 1499, 1509

(10th Cir. 1992).  That provision authorizes the payment of post-judgment interest "on a

judgment of a district court, only when the judgment becomes final after review on appeal or

petition by the United States Government, and then only from the date of filing of the transcript

of the judgment with the Secretary of the Treasury through the day before the date of the

mandate of affirmance."  31 U.S.C. § 1304(b)(1)(A).  Plaintiff has no objection to Defendant's

request to alter the judgment with respect to the award of post-judgment interest.  [Doc. 85] at 9.

Therefore, the Court will grant Defendant's request to amend the judgment with respect to the

award of post-judgment interest, which will run in accordance with the dictates of § 1304.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's

Motion for Leave to File Surreply [Doc. 89] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Alter or Amend Judgment

[Doc. 83] is **GRANTED IN PART and DENIED IN PART**.  It is **GRANTED** as to

Defendant's request to amend the award of post-judgment interest. It is **DENIED** in all other respects.

   **IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**